IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARVIN E. McALEVY, | ) | CASE NO. 4:04CV3237 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM |
| | ) | AND ORDER |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the denial, initially and upon reconsideration, of an application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433 and an application for supplemental security income (SSI) benefits based on disability under Title XVI, 42 U.S.C. §§1381-1383. Plaintiff Marvin McAlevy claims that he is disabled due to chronic back pain and bipolar disorder, Type II. The Court has carefully considered the record and the parties' briefs. (Filing Nos. 12, 16, 17.)

**PROCEDURAL BACKGROUND**

On May 31, 2001, McAlevy filed an application for disability and SSI benefits. The claims were denied initially and on reconsideration. On March 4, 2003, an administrative hearing was held before administrative law judge Richard Laverdure (hereafter "ALJ"). (Tr. 24-79.[1]) On June 3, 2003, the ALJ issued a decision finding that McAlevy was not "disabled" within the meaning of the Act and is not eligible for either disability or SSI benefits. (Tr. 14-23.) McAlevy filed a request for review of the ALJ's decision, and on May

---

[1] The record from the prior proceedings, including the hearing transcript, have been compiled and may be located at Filing No. 12. All references to the record will be to the transcript ("Tr.") and page number.

12, 2004, the Appeals Council denied McAlevy's request for review. (Tr. 7-8.) McAlevy now seeks judicial review of the ALJ's determination as the final decision of the Defendant, the Commissioner of the Social Security Administration. (Filing No. 1.)

Upon careful review of the record, the parties' briefs, and the law, the Court concludes that the Commissioner's final decision denying benefits is supported by substantial evidence on the record as a whole. For the reasons explained below, the Court will affirm the Commissioner's decision.

## FACTUAL BACKGROUND

### McAlevy's Testimony

McAlevy testified to his personal background, including his education and work experience. McAlevy is now 35 years old, has a twelfth grade education, and has performed no substantial and gainful work activity since July 14, 2000. (Tr. 28-30; 45-47.) From March to July 2000, McAlevy was employed as a laborer and assembly worker for a sign company. His past relevant work experience also includes production assembly, light truck driver, livestock yard attendant, banquet clean up helper, blender, materials handler, over-the-road trailer driver, sales clerk, and cement truck driver. (Tr. 29-30.)

McAlevy stated that he sustained his back injury when he was employed at the sign company, but that he cannot prove that it was a work-related injury. The record indicates that he took three weeks off work in June 2000 for back pain, and he returned to work in July 2000 with restrictions. (Tr. 45.) He worked for just two weeks in July before he and another employee were laid off from the company. (Tr. 47-48.) McAlevy has not returned to any substantial gainful work activity since July 2000. (Tr. 46.) McAlevy testified that

Dr. Dennis McGowan, a spine specialist from whom McAlevy sought treatment, told McAlevy not to go back to work until McAlevy was rid of the pain. (Tr. 48.) McAlevy's primary care physician, Dr. Shawn Lawrence, suggested that McAlevy apply for disability benefits. (Tr. 48.)

McAlevy's daily activities include driving his girlfriend to work, caring part-time for his young daughter, visiting with friends and his mother, working puzzles, and watching television. He said he is able to follow simple directions, and to follow complex directions if they are written down for his reference. (Tr. 37-39.) He is able to walk for about a half hour, stand in one place for 5 to 10 minutes before he needs to rest, grasp, and reach to the front. He has difficulty reaching above his head and trouble stooping to reach for something below counter level. McAlevy cannot lift heavy objects, but can lift 5 pounds. He described some difficulty working and communicating with bosses and co-workers. McAlevy also described the difficulty he has working under stress. He does not believe that he can work a 40-hour work week engaged in work activities that he has performed in the past. (Tr. 30-36).

**Medical Evidence**

The record contains medical reports dating to August 12,1999, from the Hastings Regional Center ("HRC"), that state McAlevy voluntarily admitted himself for evaluation, having experienced suicidal ideation. (Tr. 231-46.) He stayed at the HRC for several days, but he responded well to Lithium and Amitriptyline. In a medical report from that admission, the physician noted that McAlevy had a "reasonably good range of motion" in his back (Tr. 245.) In October 2001, he presented again to the HRC with complaints of negative thoughts and depression. (Tr. 309-320; 321-36.) He was seen by a psychiatrist,

3

Dr. James Baker, who diagnosed bipolar disorder, type II, and depression. Dr. Baker put McAlevy back on Lithium, and counseled him about the importance of taking the medication as directed. Dr. Baker reported that when McAlevy is taking Lithium, which has been relatively consistent since his admission to HRC in 1999, he does well. (Tr. 349-53, 378-87). A report dated January 28, 2002, indicates that by that date McAlevy was feeling more stable. (Tr. 309.)

On January 25, 2000, McAlevy presented to Dr. Lawrence complaining of low back pain and weakness in his legs. (Tr. 291.) Dr. Lawrence order a computerized tomograph (CT) scan of his lumbosacral spine that showed, "very minimal bulging annulus [a ring] at the L4-L5 and L5-S1 levels" with "[n]o nerve root compression, disc herniation or central canal stenosis." (Tr. 273.) The CT findings were consistent with early degenerative disc disease ("DDD"), as was an X-ray spine series that showed early osteophyte formation at multiple levels. (Tr. 270.) Dr. Lawrence saw him again in February. Because McAlevy stated that he could not afford to fill the medications prescribed in January, Dr. Lawrence gave him some pain medication samples. McAlevy next presented to Dr. Lawrence on June 13, 2000, complaining of back pain. On examination, Dr. Lawrence found muscle spasm, and he prescribed Flexeril and Vioxx. McAlevy returned two days later, having not taken the Vioxx, and his back was still in spasm and painful. Dr. Lawrence gave him samples of Zanaflex, but he came in three days later stating he had no relief. Lawrence ordered an MRI, which was performed on June 26, 2000, and came back as completely "[n]ormal." (Tr. 269.) When McAlevy presented on June 30, 2000, saying the pain had not improved, Dr. Lawrence referred him to the spine specialist, Dr. McGowan. (Tr. 285-91.)

McAlevy was first examined by Dr. McGowan on August 15, 2000. At that appointment, Dr. McGowan did not have the CT and MRI available for review. On neurological exam, Dr. McGowan found that McAlevy's motor strength and sensation were intact throughout. Dr. McGowan recommended a home exercise regime and suggested that McAlevy should avoid lifting more than 5 pounds frequently and 10 pounds occasionally, and also should avoid prolonged sitting. Dr. McGowan prescribed a new medicine, Baclofen, and asked McAlevy to return in a month. (Tr. 249-50.) When McAlevy returned, Dr. McGowan still had not seen the CT and MRI films, though he noted that the official reports were "unremarkable." McAlevy reported no improvement of his symptoms, and stated he had been unable to purchase medicine, including his Lithium. Dr. McGowan administered a lumbar epidural steroid injection that relieved most of McAlevy's pain. (Tr. 248.) When he returned in October, Dr. McGowan had the CT, X-rays and MRI films available, and he noted that all were within normal limits, and Dr. McGowan reported that the tests showed "absolutely no disk dessication present in the lumbar spine." (Tr. 247.) He noted that the MRI was a high-quality study, and he told McAlevy that Tylenol was safe to take and that he should take 1000 mg 4 times per day. (*Id.*)

As part of the application for disability benefits process, Dr. Lawrence evaluated McAlevy's spinal physical capacity on February 5, 2002. (Tr. 340-44.) She diagnosed chronic low back pain. The examination revealed decreased flexion and extension in the lumbar-sacral spine, muscle spasms, and an abnormal gait. The exam also demonstrated a normal MRI, normal straight leg raises, no muscle atrophy, no sensory loss, no muscle weakness, no change in reflexes. Dr. Lawrence determined that McAlevy could lift or carry more than 10 pounds occasionally and less than 10 pounds frequently; that he could sit,

stand or walk for less than two hours total in an eight hour work day; that he could continuously sit or stand for just 30 minutes at one time; and that he would need to shift positions at will, and could work a two-hour work day and a work week of no more than three days. (Tr. 342; 340-44.)

A state agency medical consultant evaluated McAlevy's residual functional capacity (hereafter "RFC") on February 28, 2002. On that date, the physician determined that McAlevy could lift or carry 10 pounds occasionally and less than 10 pounds frequently, and that he could stand, walk or sit with normal breaks for six hours in an eight-hour work day with no climbing of ladders, ropes or scaffolds, and only occasional climbing of stairs or ramps. He could occasionally stoop, kneel, crouch, or crawl, but he needed to avoid extreme cold, vibration, and hazards. The state psychological consultant opined that McAlevy would have moderate limitations in his ability to handle social conduct, though he would have the capacity to handle simple instructions. (Tr. 297-307.)

In August 2001, A. James Fix, Ph.D. prepared a psychiatric consultation wherein he noted that McAlevy had some irritability and a significant problem with anger. Dr. Fix also noted that with Lithium, McAlevy had not suicidal ideation. Dr. Fix diagnosed adjustment disorder with depression, and he concluded that McAlevy would have no restrictions on daily activities, some difficulties with social functioning, and that he had the ability to sustain concentration. (Tr. 276-80.)

***Vocational Expert's Testimony***

Testimony was also taken from vocational expert ("VE") Gail F. Leonhardt, M.S., who identified McAlevy's past work in Exhibit 18E (Tr. 223), and provided professional opinions about McAlevy's ability to engage in his past work and other employment. (Tr. 57-

78.) Given the hypothetical questions posed by the ALJ, the VE concluded that McAlevy could perform light work, which would include his past work activity as a line assembler. (Tr. 65-66). Leonhardt testified that such positions are available locally and in the national economy in significant numbers.

## THE ALJ'S DECISION

The ALJ found that McAlevy was found not "disabled" pursuant to sections 216(I) and 223 of the Act based on his application for disability benefits or pursuant to sections 1614(a)(3)(A) of the Act based on his application for SSI benefits. The ALJ followed the five-step sequential evaluation process set out in 20 C.F.R. §§ 416.1520 and 416.920 (2002) and determined that McAlevy has not performed substantial gainful activity since July 14, 2000; that he has severe impairments of degenerative disk disease of the lumbar spine and bipolar disorder; that the impairments do not meet or equal any listed impairment of Appendix 1, Subpart P of Social Security Administration Regulation No. 4; that McAlevy retains the RFC for light work, with alternating sitting and standing every twenty to thirty minutes, occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no work at heights or around hazards; limited contact with supervisors and co-workers; no complex tasks or instructions; and an average production pace. The ALJ concluded that McAlevy can perform his past relevant work as a production assembler. In reaching that conclusion, the ALJ discounted McAlevy's subjective complaints about the intensity, persistence, and functionally limiting effects of his impairments, and the ALJ did not give controlling or substantial weight to the functional restrictions articulated in Dr. Lawrence's assessments relative to the amount of time that McAlevy could sit, stand, and walk in an eight hour work day and the number of days he was able to work.

**STANDARD OF REVIEW**

In reviewing an ALJ's decision to deny disability benefits, a district court does not re-weigh evidence or the credibility of witnesses or revisit issues *de novo*. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995); *Harris v. Shalala,* 45 F.3d 1190, 1193 (8th Cir. 1995.) Rather, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and, if so, to affirming that decision. *Harris,* 45 F.3d at 1193.

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir. 2001) *quoting Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir.1998). The Court must consider evidence that fairly detracts from, as well as supports, the Commissioner's decision. *Id.* As long as substantial evidence supports the Commissioner's decision, that decision may not be reversed because substantial evidence would also support a different conclusion or because a district court would decide the case differently. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000); *Harris,* 45 F.3d at 1193.

**DISCUSSION**

McAlevy claims that the ALJ erred 1) in failing to give the opinions of Dr. Lawrence controlling weight, or alternatively, substantial weight, in determining McAlevy's RFC; and 2) in failing to apply *Polaski v. Heckler*, 739 F. 2d 1320 (8th Cir. 1984) and finding McAlevy's testimony not entirely credible.

RFC is defined as what McAlevy "can still do despite . . . limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2002). RFC is an assessment based on all "relevant evidence,"

*id.*, including a claimant's description of limitations; observations by treating or examining physicians or psychologists, family, and friends; medical records; and the claimant's own description of his limitations. *Id.* §§ 404.1545(a)-(c), 416.945(a)-(c). The ALJ must determine McAlevy's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and the claimant's own description of his limitations. *McKinney,* 228 F.3d at 863-64. In determining the fourth and fifth sequential steps relating to a claimant's RFC to perform past relevant work and a range of work activities in spite of his impairments, an ALJ must evaluate the credibility of a claimant's testimony regarding subjective pain complaints.

**Credibility**

The underlying issue in this case is the severity of the pain. *Black v. Apfel,* 143 F.3d 383, 386-87 (8th Cir. 1998.) The ALJ is allowed to determine the "authenticity of a claimant's subjective pain complaints." *Ramirez v. Barnhart,* 292 F.3d 576, 582 (8th Cir. 2002) (citing *Troupe v. Barnhart,* 32 Fed. Appx. 783, 784 (8th Cir. 2002); *Clark v. Shalala,* 28 F.3d 828, 830-31 (8th Cir. 1994).) An "'ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole.'" *Halley v. Massanari,* 258 F.3d 742, 748 (8th Cir. 2001) (stating the issue as whether the record as a whole reflected inconsistencies that discredited the plaintiff's complaints of pain) (quoting *Gray v. Apfel,* 192 F.3d 799, 803 (8th Cir.1999)).

In evaluating subjective complaints, the ALJ must consider, in addition to objective medical evidence, any other evidence relating to: a claimant's daily activities; the duration, frequency and intensity of pain; the dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *See Polaski,* 739 F.2d at 1322; *see*

*also* §§ 404.1529, 416.929. The credibility of a claimant's subjective testimony is primarily for the ALJ, not a reviewing court, to decide, *see Pearsall v. Massanari,* 274 F.3d 1211, 1218 (8th Cir. 2001), and deference is generally granted to an ALJ's determination regarding the credibility of a claimant's testimony and, in particular, subjective complaints of pain.  *See Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001) (stating that if an ALJ provides a "good reason" for discrediting claimant's credibility, deference is given to the ALJ's opinion, although every factor may not have been discussed.)

The ALJ summarized McAlevy's testimony and described his daily activities according to his testimony.  (Tr. 19-21.)  The ALJ compared McAlevy's complaints against medical and other documentary evidence, including reports of treating and consultant physicians, the findings of MRI, CT and radiologic examinations, and statements of third parties. The ALJ found McAlevy to be "generally credible," but he also found McAlevy's description of the "alleged intensity, persistence and functionally limiting effects of the impairments "are not entirely credible." (Tr. 21.)   Specifically, he found that the "extent of his symptoms and limitations is not fully supported by the record, which strongly suggests he is more capable than he appears to believe." (Tr. 22.)  I find that the ALJ's credibility determination is a fair assessment of McAlevy's credibility, and there is substantial evidence in the record to support that conclusion.

McAlevy argues that the ALJ did not properly apply the correct standard in evaluating his subjective complaints of pain.  McAlevy argues that the ALJ failed to discuss the *Polaski* factors in assessing his credibility.  The *Polaski* standard is the guide for

10

credibility determinations.[2] An ALJ is required to make an "express credibility determination" when discrediting a social security claimant's subjective complaints. *Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000.) This duty is fulfilled when an ALJ acknowledges the *Polaski* factors, and the ALJ has clearly examined the factors before discounting the claimant's testimony. An ALJ is "not required to discuss methodically each *Polaski* consideration." *Id.* at 972.

Pursuant to federal regulations, the ALJ must consider all symptoms, "including pain, and the extent to which symptoms can reasonably be accepted as consistent with the objective medical evidence," defined as "medical signs and laboratory findings." 20 C.F.R. §§ 404.1529, 416.929. Medical "signs" are defined as:

> anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms.) Signs must be shown by

---

[2] "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.

The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

    1. the claimant's daily activities;
    2. the duration, frequency and intensity of the pain;
    3. precipitating and aggravating factors;
    4. dosage, effectiveness and side effects of medication;
    5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."
*Polaski,* 739 F.2d at 1322.

11

> medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, *e.g.*, abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.

20 C.F.R. §§ 404.1528(b), 416.928(b) (2002.)

> "Laboratory findings" are defined as: "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electro physiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests."

20 C.F.R. §§ 404.1528(c), 416.928(c) (2002).

Social Security Ruling 96-7p provides that a "strong indication" of the credibility of a claimant's statements is the consistency of the claimant's various statements and the consistency between the statements and the other evidence in the record. Ruling 96-7p provides that the ALJ must consider such factors as:

> \* The degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.
>
> \* The consistency of the individual's own statements. The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record. Especially important are statements made to treating or examining medical sources and to the "other sources" defined in 20 CFR 404.1513(e) and 416.913(e.) However, the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. Therefore, the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects.

> \* The consistency of the individual's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work. This includes any observations recorded by SSA employees in interviews and observations recorded by the adjudicator in administrative proceedings.

SSR 96-7p, 1996 WL 374186 (S.S.A.) at 5 (July 2, 1996.)[3]

In this case, I find that the ALJ performed a thorough *Polaski* analysis in determining the credibility of McAlevy's subjective pain complaints. While the ALJ did not expressly mention *Polaski*, in making the credibility determination the ALJ considered all the *Polaski* factors: McAlevy's daily activities; the duration, frequency and intensity of McAlevy's pain; the objective findings on physical examinations; precipitating and aggravating factors; statements provided by his mother, girlfriend, and his house mate; the dosage, effectiveness and side effects of his medications and his reasons for not taking pain medications;[4] and McAlevy's functional restrictions as reported by McAlevy and as demonstrated on physical examination. *See Pena v. Chater,* 76 F.3d 906, 908 (8th Cir.1996) (affirming the ALJ's discount of claimant's subjective complaints of pain, where the plaintiff cared for one of his children on a daily basis, drove a car infrequently, and occasionally went grocery shopping.)

---

[3]Social Security Ruling 96-7p is entitled: "Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements.

[4] McAlevy testified that he does not much care for pain killers, and that he was unable to afford the medication, and both reasons for not taking prescription pain medication are included in the medical records as reported to his treating physicians. (Tr. 38). I note that economic justifications for the lack of treatment can be relevant to a disability determination, but they are not determinative. *Clark v. Shalala*, 28 F.3d 828, 831 n. 4 (8th Cir. 1994); *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir.1992).

I find that the ALJ thoroughly considered McAlevy's subjective pain complaints, and discredited them to some extent based on the reports of his treating physicians, including the findings of Dr. Lawrence's physical examination of February 5, 2002, (which included normal straight leg rasing, no muscle atrophy, no sensory loss, no muscle weakness, and intact sensation, and reference to the normal MRI), the reports of consultant physicians including the assessment performed on February 28, 2002; McAlevy's oral and written statements including his admitted reluctance to take pain medication, and the unremarkable results of the X-ray series, CT scan, and MRI scan.  The ALJ's credibility determinations that 1) McAlevy is generally credible in his testimony that he has medical disorders that cause him some degree of discomfort, and 2) McAlevy is "not entirely credible" about the intensity, persistence, and functionally limiting effect of that discomfort, are proper under *Polaski* and the federal regulations.  The ALJ determined that McAlevy's pain is not of such severity and duration as to prevent him from performing his past relevant work as an assembly person.  *See Scdoris v. Barnhart,* 226 F.Supp.2d 1183, 1190 (D. Neb. 2002) (finding that the medical evidence did not support a finding of total disability, and the plaintiff was not "entirely credible" with his complaints of disabling pain.)  The ALJ's credibility determinations are supported by substantial evidence in the record as a whole.

**Residual Functional Capacities Assessment**

McAlevy argues that in developing the residual functional capacities assessment, the ALJ erred in failing to give the appropriate weight to the restrictions identified by Dr. Lawrence in the spinal physical capacity evaluation.  A RFC assessment is based on all relevant evidence.  Thus, the ALJ must determine McAlevy's RFC based on the medical

14

records, observations of treating physicians and others, and the claimant's own description of his limitations. *McKinney,* 228 F.3d at 863-64.

"The [social security] regulations provide that a treating physician's opinion . . . will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 000) (quoting 20 C.F.R. § 404.1527(d)(2)). An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered an opinion inconsistent with other evidence as a whole. *Id.* at 1013; *Holmstrom*, 270 F.3d at 720. "The ALJ's function is to resolve conflicts among 'the various treating and examining physicians.'" *Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) (quoting *Bentley v. Shalala*, 52 F.3d 784, 785, 787 (8th Cir. 1985)). Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give "good reasons" for that weighting. *Holmstrom*, 270 F.3d at 720; *Prosch*, 201 F.3d at 1013 (quoting 20 C.F.R. § 404.1527(d)(2)).

McAlevy contends that the ALJ substituted his own opinion for that of the treating physician without the benefit of substantial evidence to support it. The ALJ did not give weight to Dr. Lawrence's restrictions regarding 1) the duration of time that McAlevy can stand, walk, and sit in a work day; 2) his ability to work only a two- hour work day; or 3) his ability to work a maximum of a three-day work week. The ALJ found that these restrictions were not supported by clinical evidence or the diagnostic tests performed on McAlevy, and I agree. There is nothing in the record to support such severe restrictions on McAlevy's functional capacity. The ALJ stated in relevant part:

15

> I also considered the opinions of claimant's treating physicians. Dr. McGowan and Dr. Lawrence imposed significant restrictions on claimant's physical abilities. I have accorded less than controlling weight to the opinions of the treating physicians for several reasons. . . .[They] conducted physical examinations with minimally abnormal clinical signs that are inconsistent with the degree of functional loss indicated. These physician reports also noted unremarkable findings on MRI and only minimal degenerative changes in the back that do not support the level of limitations. It is also significant that very conservative medical management was prescribed [by them] in spite of the opined limitations. There are degenerative changes in the back that would cause a limitation to work, but not to the degree indicated by Dr. McGowan and Dr. Lawrence.

(Tr. 20.) The several medical records from Dr. Lawrence demonstrate that from January through June 2000, Dr. Lawrence was unable to identify a cause for McAlevy's pain. He referred his patient to Dr. McGowan. After three visits, Dr. McGowan was unable to establish a cause for McAlevy's low back pain. What is established in both treating physicians' records, however, is that McAlevy did not fill prescriptions and did not take medications regularly, except for those prescribed by Dr. Baker for his bipolar disorder. (Tr. 38, and n. 4 *supra*.) Both physicians also reviewed the objective laboratory test results and found no evidence on X-ray, CT scan, or MRI of disk herniation, spinal stenosis, or nerve root compression or impingement.

The Court has carefully reviewed the ALJ's summary of Dr. Lawrence's and Dr. McGowan's reports and their actual medical and laboratory records. Dr. Lawrence's opinions regarding McAlevy's limitations relative to sitting and standing for only two hours, and a total work day of two hours, and a work week of up to three days, are not supported by the medical evidence of the treating or consultative physicians, summarized previously, including Dr. Lawrence's own treatment notes on physical and laboratory examinations. The ALJ's conclusion, that the treating physicians' opinions regarding functional limitations were inconsistent with the evidence in the record as a whole, is supported by substantial

evidence. *See Dunahoo*, 241 F.3d at 1038 (finding that the treating physician's opinion was contradicted by the opinions of four other physicians).

A vocational expert's hypothetical questions are proper if they sufficiently set out all of the impairments accepted by the ALJ as true, and if the questions likewise exclude impairments that the ALJ has reasonably discredited. *Pearsall,* 274 F.3d at 1220. The VE opined that McAlevy had the residual functional capacity to perform his past relevant work as a production assembler, and that these jobs exist in significant numbers in Nebraska and the national economy. (Tr. 66.) Examining the hypothetical posed to the VE in this case, the questions included only those impairments that the ALJ found to be substantially supported by the record as a whole.

## CONCLUSION

For the reasons discussed, the Court concludes that the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

**IT IS ORDERED:**

1. The decision of the Commissioner is affirmed, and the appeal is denied; and
2. Judgment in favor of the Defendant will be entered in a separate document.

DATED this 3rd day of January, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge